UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROSLYN McCOY,

                                        NO. CIV. S-09-1973 LKK/CMK

        Plaintiff,

    v.

DEPARTMENT OF THE ARMY --
ARMY CORPS OF ENGINEERS and
HONORABLE JOHN McHUGH,
SECRETARY OF THE ARMY,                  O R D E R
collectively,


        Defendants.

_____/

    Roslyn   McCoy,  a  former  employee  of  the  Army  Corps  of
Engineers  brought  this  employment  discrimination  suit.  Plaintiff
claims  that  she  was  terminated  from  her  clerical  position  with  the
Corps  because  of  her  dyslexia,  in  violation  of  the  Rehabilitation
Act of 1973. The complaint alleges both retaliation and disparate
treatment.  Pending  before  the  court  is  a  motion  for  summary
judgment  by  defendant  John  McHugh,  Secretary  of  the  Army.  For  the
reasons explained below, defendant's motion is GRANTED with respect
to  plaintiff's  claim  for  compensatory  damages  for  retaliation,  and
is  DENIED  in  all  other  respects.

////

1

## I. Plaintiff's Allegations

Plaintiff began her employment as an administrative support assistant in the Equal Employment Opportunity office at the Army Corps of Engineers in May 2005. She was hired through the Workforce Recruitment Program, which provides funding for agencies within the Defense Department to hire people with disabilities for limited terms. Plaintiff self-designated as having a learning disability when she applied for the job.

Prior to starting work, plaintiff spoke to supervisor Linda Brown about her disability, and they discussed accommodations that would be provided to plaintiff. Plaintiff asserts that one of those accommodations was that Ms. Brown would proofread plaintiff's work.[1] Ms. Brown also supervised Barbara Dwyer, an EEO specialist.

When plaintiff's initial term of employment ended in October, 2005, Ms. Brown converted plaintiff's term to a two-year position as a Program Support Clerk. In that position, plaintiff provided clerical and administrative support to Ms. Brown, Ms. Dwyer, and other managers.

In April, 2006, plaintiff was entering the office at the same

---

[1] This is alleged in the Second Amended Complaint ("SAC") at ¶ 8. It is asserted to be in dispute. In a declaration, Ms. Brown asserts that "at no point did I inform Ms. McCoy or accept from her that she would not be responsible for her own work and that she had no obligation to proof read her final product." Def.'s Ex. C ,Decl. Linda Brown ("Brown Decl.") ¶ 13. However, in the EEO hearing in this matter, Brown stated: "The reasonable accommodation I provided you for where I was proofreading your work prior–while we were waiting for the computer technology equipment. . . and for you to tell me that it was working for you and that I no longer needed to proofread your work." Pl.'s Ex. 1, Brown EEO Testimony 207:12-17.

1  time as A.R. Smith, an African-American[2] employee of the Corps.

2  Smith heard plaintiff say to him "Where are you going? We don't

3  allow your kind in here." Def.s' Ex. D, Dep. A.R. Smith ("Smith

4  Dep.") 19:24-25, 26:1-2. Mr. Smith found the comment to be

5  "inappropriate," id. 19:10-11, "unconscionable and defamatory," Ex.

6  4 to Smith Dep. He reported the incident to Ms. Brown. Smith Dep.

7  37:11-18; Ex. 4 to Smith Dep. Ms. Brown counseled plaintiff about

8  the incident.

9  In June, 2006, plaintiff received a positive performance

10  evaluation from Ms. Brown.

11  In August, 2006, plaintiff and Ms. Dwyer met with the Chief

12  of Staff for the Sacramento office, Ms. Richert. In the meeting,

13  plaintiff, Dwyer, and Richert spoke confidentaly about Ms. Brown.

14  Plaintiff complained about some problems that she had with Ms.

15  Brown, and Ms. Richert asked plaintiff whether plaintiff was

16  claiming to have been subject to discrimination and a hostile work

17  environment. Plaintiff states that she raised concerns about

18  hostile work environment and disability discrimination at the

19  meeting, McCoy Decl. ¶ 7, but this fact is disputed by defendants.

20  Ms. Brown learned of the meeting, either before or after it

21  occurred, and learned that the meeting was about her management

22  style.[3] Testimony of Linda Brown at EEO hearing, Pl.'s Ex. 6

23  _____

24  [2] Ms. Dwyer testified in the EEO hearing that Mr. Smith is African-American, but plaintiff disputes this fact on the basis that Ms. Dwyer lacks personal knowledge of it.

25

26  [3] Defendant claims that Ms. Brown never learned about the substance of the meeting. However Ms. Brown testified at the EEO

3

1   163:21-24.

2       In August, 2006, plaintiff was involved in making changes to
3   a flyer for a "Diversity Jubilee" event sponsored by the EEO
4   office. After plaintiff made her changes, some of the contents of
5   the flyer were inaccurate. On or about August 23, 2006, Richert and
6   Brown met with plaintiff to discuss the inaccuracies. In the
7   meeting, Richert asked plaintiff whether she was expected to
8   proofread her own work, and plaintiff responded "no." Ms. Brown
9   declares that she considered this to be a false statement by
10  plaintiff about her job responsibilities and that it "led her to
11  immediately question Ms. McCoy's candor and sharply eroded my trust
12  in her." Brown Decl. ¶ 13. Plaintiff disputes this statement by
13  Brown, alleging that it is pretext.

14      On or about August 23, 2006, Brown noticed that someone on her
15  staff had set up meetings with volunteers for the Diversity
16  Jubilee. She wanted to reward the initiative shown by the person
17  who had set up the meetings and inquired separately of both Dwyer
18  and plaintiff as to whose idea it was to set up the meetings. Both
19  Dwyer and plaintiff claimed credit for the meetings. Brown then met
20  with Dwyer and plaintiff together and asked them whose idea it was.
21  Dwyer indicated that it was her idea, and plaintiff remained
22  silent. Plaintiff also remained silent when Brown asked her why she
23  was claiming credit for Dwyer's work. The parties dispute the
24  meaning of plaintiff's silence, and whether, in fact, the idea to

25  _____

26  hearing that she learned that the meeting was about her management
    style. Pl.'s Ex. 6 163:21-24.

1  set up the meetings was exclusively Dwyer's.

2      On September 7, 2006, Brown gave notice to plaintiff that she

3  was terminated effective September 15, 2006, within her

4  probationary period. The notice stated:

> You are being terminated because of your
> unsatisfactory conduct including your making a false
> statement to the Chief of Staff during a meeting on
> 23 August 2006 wherein you stated "you were not
> required to proofread your work"; on 24 August 2006,
> you made a false statement to me when you said that
> it was your idea to meet with Diversity Jubilee
> volunteers prior to the event; and your
> inappropriate comment to a member of the Safety
> Office on 7 April 2006.

11 Notice of Termination, Ex. E to Brown Decl. Plaintiff disputes that

12 these were the real reasons for her termination.

13     Plaintiff filed a formal EEO complaint on October 17, 2006,

14 alleging discrimination and reprisal. A hearing was held in

15 February 2009 before an Administrative Law Judge ("ALJ"). On April

16 16, 2009, the Department of the Army issued a final agency decision

17 ("FAD"), in which it implemented the ALJ's decision that the

18 defendant had met its burden of showing that the termination was

19 for legally sufficient reasons. Plaintiff received an emailed copy

20 of the FAD on April 16, 2009 and on April 17, 2009. Plaintiff

21 received a copy of the FAD via certified mail on April 23, 2009.

22        **II. Standard for a Motion for Summary Judgment**

23     Summary judgment is appropriate when there exists no genuine

24 issue as to any material fact. Such circumstances entitle the

25 moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c);

26 see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

1  Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). Under

2  summary judgment practice, the moving party

> always bears the initial responsibility of informing
> the district court of the basis for its motion, and
> identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if
> any," which it believes demonstrate the absence of a
> genuine issue of material fact.

7  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.

8  R. Civ. P. 56(c)).

9      If the moving party meets its initial responsibility, the

10 burden then shifts to the opposing party to establish the existence

11 of a genuine issue of material fact. Matsushita Elec. Indus. Co.

12 v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); see also First

13 Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89

14 (1968); Secor Ltd., 51 F.3d at 853. In doing so, the opposing party

15 may not rely upon the denials of its pleadings, but must tender

16 evidence of specific facts in the form of affidavits and/or other

17 admissible materials in support of its contention that the dispute

18 exists. Fed. R. Civ. P. 56(e); see also First Nat'l Bank, 391 U.S.

19 at 289. In evaluating the evidence, the court draws all reasonable

20 inferences from the facts before it in favor of the opposing party.

21 Matsushita, 475 U.S. at 587-88 (citing United States v. Diebold,

22 Inc., 369 U.S. 654, 655 (1962) (per curiam)); County of Tuolumme

23 v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

24 Nevertheless, it is the opposing party's obligation to produce a

25 factual predicate as a basis for such inferences. See Richards v.

26 Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The

opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87 (citations omitted).

### III. Analysis

Defendant moves for summary judgment on the basis that plaintiff's claims are time-barred, that the claims fail as a matter of law, and that plaintiff's remedies should be limited.

**A. Plaintiff's claim is not time-barred.**

Defendant argues that all of plaintiff's claims are time-barred because plaintiff filed this action 92 days after receiving the final agency decision on her claim. It has been held that there is a 90-day time limit imposed by the Rehabilitation Act. Plaintiff argues that defendant has waived this defense by not raising it earlier, or in the alternative, that equitable tolling applies since plaintiff reasonably relied on statements by defendant's counsel throughout the administrative procedure that email service of documents is not sufficient and that papers needed to be served by mail with a certificate of service. Plaintiff claims that she reasonably took this to mean that the notice of final agency decision was not received until it was received by certified mail on April 23, 2009. Below the court discusses both the last date for filing and whether tolling applies.

A federal employee may file an employment discrimination suit in district court after exhausting her administrative remedies. As

a "precondition to filing [an employment discrimination suit] the complainant must seek relief in the agency that has allegedly discriminated against him." Kraus v. Presidio Trust Facilities Division/Residential Mgmt. Branch, 572 F.3d 1039, 1043 (9th Cir. 2009)(quoting Brown v. GSA, 425 U.S. 820 (1976)). After exhausting administrative remedies, the complainant has ninety days to file her complaint in the district court. "A complainant who has filed an individual complaint. . . is authorized under Title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court (a) within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed." 29 C.F.R § 1614.407.

The 90-day statute of limitations for suing the federal government for employment discrimination is not a jurisdictional bar, and may be equitably tolled. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). "We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Id. See also, Williams-Scaife v. Department of Defense Dependent Sch., 925 F.2d 346 (9th Cir. 1991)("[E]quitable tolling is applicable in employment discrimination cases filed by federal employees."). "Equitable tolling does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing. Instead, it focuses on whether there was excusable delay by the

1  plaintiff." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th
2  Cir. 2000). In Santa Maria, the court concluded that equitable
3  tolling does not apply once the plaintiff "has sufficient
4  information to know of the possible existence of a claim." Id.
5  Equitable tolling is not appropriate when the late filing is due
6  to plaintiff's lack of due diligence. Irwin,498 U.S. at 95; Scholar
7  v. Pacific Bell, 963 F.2d 264, 268 (9th Cir. 1992). Moreover, "a
8  pro se petitioner's lack of legal sophistication is not, by itself,
9  an extraordinary circumstance warranting equitable tolling."
10 Rasberry v. Garcia, 448 F.3d 1150, 1151 (9th Cir. 2006).

11      Although not precisely defined in the statute, regulations,
12 or Ninth Circuit case law, other circuits have held that "receipt"
13 of final agency action is actual or constructive notice of the
14 action, and that it need not be by mail, or even written. See,
15 e.g., Ebbert v. DaimlerChrystler Corp., 319 F.3d 103, 116 (3d Cir.
16 2003)("[W]e hold that oral notice can suffice to start the 90-day
17 period.). As explained below, that rule is not tendered in this
18 case.

19      Here plaintiff argues that equitable tolling applies to the
20 period between her initial receipt of the notice of the final
21 agency action by email and when she received the decision by
22 certified mail. It is undisputed that plaintiff received an emailed
23 copy of the final agency decision on April 16, 2009 and again on
24 April 17, 2009. Plaintiff received a copy of the final agency
25 decision by certified mail on April 23, 2009. Plaintiff filed her
26 original complaint with this court on July 17, 2007, within 90 days

1  of receiving the certified mail copy of the final agency decision,

2  but 92 days after first receiving the decision by email.

3      Plaintiff argues that defendant's counsel in the EEO hearing

4  informed her throughout the EEO process that documents needed to

5  be served by certified mail, and "sending documents by

6  mail/electronically is insufficient service." Decl. McCoy ¶ 12;

7  August 31, 2007 email, Ex. 2 to Decl. McCoy. Counsel's admonition

8  was made in response to plaintiff's request to receive documents

9  electronically so that she could use software to read the documents

10  to her allowing for better comprehension, given plaintiff's

11  disability. Decl. McCoy ¶ 11. Plaintiff, who was <u>pro se</u> during the

12  administrative process and at the time of the filing of the

13  original complaint, avers that she reasonably believed that this

14  principle applied to calculating the time for filing her complaint

15  after receiving the notice of final agency decision. From these

16  undisputed facts the court concludes that the statute of

17  limitations was equitably tolled for the period in between April

18  16, 2007, and April 23, 2007, and that plaintiff's complaint was

19  timely filed.

20      In sum the court concludes that plaintiff reasonably relied

21  on defendant's counsel's statements, and thus reasonably believed

22  that her claim had accrued only upon receipt of the final agency

23  decision by mail. Without implying that there was any wrongdoing

24  by defendant's counsel, the court finds that counsel's statements

25  resulted in inadequate notice of the statutory period. <u>See</u> <u>Scholar</u>

26  <u>v. Pacific Bell</u>, 963 F.2d 264, 268 (9th Cir. 1992)(equitable

1  tolling appropriate "when the EEOC's notice of the statutory period

2  was clearly inadequate."). Plaintiff did not fail to exercise due

3  diligence, and filed her claim within 90 days of receiving the

4  final agency decision by mail.

5  _____Although the court may not rely on plaintiff's <u>pro se</u> status

6  in and of itself as a basis for equitable tolling, plaintiff's lack

7  of legal sophistication, coupled with counsel's statements that

8  email delivery of documents does not constitute sufficient service

9  within the EEO process, resulted in an "extraordinary circumstance

10  warranting equitable tolling." <u>Rasberry</u>, 448 F.3d at 1151.[4]

11  **B. Plaintiff's Disparate Treatment Claim**

12       Plaintiff argues that she was terminated from her employment

13  because her supervisor, Linda Brown, was biased against people with

14  learning disabilities, including plaintiff.

15       The Rehabilitation Act of 1973, 29 U.S.C. § 791 prohibits

16  employment discrimination by the federal government against people

17  with disabilities. "To state a prima facie case under the

18  Rehabilitation Act, a plaintiff must demonstrate that (1) she is

19  a person with a disability, (2) who is otherwise qualified for

20  employment, and (3) suffered discrimination because of her

21  disability." <u>Walton v. United States Marshals Serv.</u>, 492 F.3d 998,

22  1005 (9th Cir. 2007). "The requisite degree of proof necessary to

23  establish a prima facie case for Title VII and ADEA claims on

24

25       [4] Having concluded that equitable tolling applies, the court
    need not consider plaintiff's claim that the defendant waived her
26  untimely filing.

summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate non-discriminatory reason for the adverse employment action--in this case, termination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (U.S. 1973); Sisson v. Helms, 751 F.2d 991 (9th Cir. 1985)(applying the McDonnell Douglas burden-shifting framework to Rehabilitation Act claims). The plaintiff then must "be afforded a fair opportunity to show that [defendant's] stated reason for respondent's rejection was in fact pretext." McDonnell Douglas Corp., 411 U.S. at 803.

Although the burden of proof remains on plaintiff throughout the burden-shifting analysis, "as a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry - one that is most appropriately conducted by a factfinder, upon a full record." Chuang v. University of Cal. Davis, 225 F.3d 1115, 1124 (9th Cir. 2000).

**i. The Prima Facie Case**

Defendant does not dispute that plaintiff has met the first and second elements of the prima facie case–that she was disabled and that she was otherwise qualified for employment. Defendant argues that plaintiff cannot satisfy the third element because she

cannot show that there were *any* employees similarly situated to plaintiff, let alone any that were treated favorably. Defendants argue that such a showing is required in order to establish a disparate treatment claim.

The defendant's argument demonstrates its weakness. If there are no other persons similarly situated, it cannot follow that a claim will not lie and plaintiff must lose her case. Defendant has pointed out some differences between plaintiff and the putative similarly situated employees. Barbara Dwyer had the same supervisor as plaintiff, but substantially different job responsibilities. Indeed, plaintiff provided clerical support to Ms. Dwyer. The other employees listed by plaintiff as similarly situated, worked in different departments and under different supervisors. Evidence of similarly situated employees who were treated more favorably, however, is but one way of satisfying the third element of the McDonnell-Douglas prima facie case. That element can also be satisfied by showing that "other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004). Thus, the Circuit court has explained "[i]n the context of a lay-off, plaintiff need not show that he was replaced by a member of a different race; rather, he must show that his lay off occurred under circumstances giving rise to an inference of discrimination. Aragon can establish this inference by showing the employer had a continuing need for [his] skills and services in that [his] various duties were still being performed, or by showing

that others not in [his] protected class were treated more favorably." <u>Aragon v. Republic Silver State Disposal</u>, 292 F.3d 654, 660 (9th Cir. 2002)(internal citation omitted).

In the instant matter plaintiff has offered evidence that could support a finding that her termination was motivated by Ms. Brown's bias against the disabled. That evidence includes a declaration by Army Corps of Engineers employee Penelope Cross, who testified that on two occasions she "heard Linda Brown tell Sue Bayless that Rosyln McCoy was not of average intelligence, nor could she read or write, or words to that effect." On another occasion, Penelope Cross heard Brown refer to plaintiff as "mentally handicapped." Decl. of Penelope Cross, Pl.'s Ex. 13. These statements could show that Brown associates dyslexia with intellectual deficiency. Defendants object to the Cross declaration on the basis that it contradicts an earlier declaration by Ms. Cross in which she only identified one statement by Ms. Brown. That declaration submitted by the defendant, however, also contains a statement by Ms. Cross that she heard Ms. Brown say that each of her employees was "handicapped by one form of stupidity or another." January 30, 2009 Decl. of Cross, Ex. A to Def.'s Reply Brief. This statement, if true, surely gives rise to an inference that Ms. Brown associates being disabled with stupidity. Defendant argues that even if she did say that her employees were "handicapped by one form of stupidity or another," Brown did not use those words with a discriminatory animus. Clearly Brown's intent is for the trier of fact, and cannot be disregarded simply

1  because she says so. Moreover, other evidence has been produced by
2  plaintiff.

3      Plaintiff avers in a declaration, that on several occasions,
4  Brown "expressed great anger and resentment" about the time and
5  effort she had to give her own daughter, who Brown referred to as
6  "mentally retarded," and "mentally ill." McCoy Decl. ¶ 9.

7      In his motion, defendant's only argument as to plaintiff's
8  prima facie case is about the insufficiency of the similarly-
9  situated employees proffered by plaintiff. The court finds that the
10  evidence produced by plaintiff raises a material fact as to whether
11  the circumstances surrounding plaintiff's termination give rise to
12  an inference of discrimination. Plaintiff has therefore made a
13  prima facie case of discrimination.
14  **ii. Defendant's proffered non-discriminatory reason for the**
15  **termination.**

16      "When the plaintiff has proved a prima facie case of
17  discrimination, the defendant bears only the burden of explaining
18  clearly the nondiscriminatory reasons for its actions." <u>Tex. Dep't</u>
19  <u>of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 260 (1981). "This burden
20  is one of production, not persuasion; it 'can involve no
21  credibility assessment.'" <u>Reeves v. Sanderson Plumbing Prods.</u>, 530
22  U.S. 133, 142 (U.S. 2000) (quoting <u>St. Mary's Honor Center</u>, supra,
23  at 509).

24      In this case, defendant has met its burden by asserting that
25  plaintiff was fired for the three reasons stated in her termination
26  letter i.e. that she made a racially offensive remark to a co-

1  worker, and that she twice made false statements at work.

2  **iii. Plaintiff's Pretext Argument**

3      Plaintiff argues that there are triable issues of material
4  fact as to whether she was actually terminated because of her
5  disability, and not for the reasons stated in the termination
6  letter and repeated in defendant's motion. A plaintiff can prove
7  pretext either "(1) indirectly, by showing that the employer's
8  proffered explanation is unworthy of credence because it is
9  internally inconsistent or otherwise not believable, or (2)
10 directly, by showing that unlawful discrimination more likely
11 motivated the employer." Chuang v. University of Cal. Davis, 225
12 F.3d 1115, 1127 (9th Cir. 2000)[5]. The court looks at the two types
13 of evidence cumulatively; "a combination of the two kinds of
14 evidence may in some cases serve to establish pretext so as to make
15 summary judgment improper." Id. Additionally, the prima facie case
16 itself may raise a genuine issue of material fact regarding the
17 truth of the employers' proffered reasons. Id.

18      In response to defendant's motion Plaintiff addresses each of
19 the three stated reasons given by the employer. First, the incident
20 with Mr. Smith occurred six months before the termination. Moreover
21 a performance review that occurred between plaintiff's remarks to
22 Mr. Smith and plaintiff's termination made no mention of the
23 incident. In that performance review, plaintiff received "success"

24

25      [5] The court does not stop to explore what sometimes appears
26 to be confusion about the proof required to prevail at trial and
    the showing necessary to defeat a motion for summary judgement.

1   or "excellence" marks in all sections. Pl.'s Ex 4. Defendant argues

2   that the incident did not appear in the performance review because

3   the review period closed on April 30, 2006, and Brown did not learn

4   of the Smith incident until May 2, 2006. This assertion is not

5   dispositive. Plaintiff asserts in her declaration that Brown

6   appeared to be satisfied after plaintiff apologized to Mr. Smith,

7   and plaintiff did not hear anything more about the issue until she

8   received her termination letter. McCoy Decl. ¶ 10.

9       Second, one of the stated reasons for the termination was that

10  plaintiff had falsely taken credit for work performed by her co-

11  worker, Ms. Dwyer. However, prior to the termination, Ms. Dwyer

12  told Brown that she did not believe that plaintiff had

13  intentionally lied. EEO Hearing Transcript, Pl.'s Ex. 12.

14      Third, one of defendant's stated reasons for the termination

15  was that plaintiff made the false statement that she was not

16  required to proofread her own work. Plaintiff has presented

17  evidence that Brown had, in fact, agreed to proofread plaintiff's

18  work as an accommodation for plaintiff's disability. Pl.'s Ex. 1

19  207:12-17 (testimony by Ms. Brown that she agreed to proofread

20  plaintiff's work). A fact finder could infer, therefore, that Brown

21  knew that plaintiff's statement in this regard was not false, and

22  that Brown was merely using that basis as a pretext.

23      Defendant argues that the evidence is insufficient to overcome

24  the so-called "same-actor inference" established in Bradley v.

25  Harcourt, Brace & Co., 104 F.3d 267 (9th Cir. 1996). There, the

26  court held that "where the same actor is responsible for both the

17

hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." Here, Brown converted plaintiff from an 80-day position to a two-year term on October 1, 2005. However, plaintiff has rebutted this inference with evidence showing that Brown became biased while working with plaintiff because of the perceived burden imposed by plaintiff's disability. See Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1097 (9th Cir. 2005)(same inference actor may have been rebutted if plaintiff "proffered evidence suggesting that Andreassen developed a bias against Norwegians during that period.").[6]

Thus, the court concludes that plaintiff has provided evidence from which a trier of fact could conclude that "the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." Chuang, supra. In her prima facie case, plaintiff also provided evidence that her termination was motivated by unlawful discrimination on Brown's part. Together, these two categories of evidence offered by plaintiff raise a genuine issue of material fact as to whether defendant's stated reason for firing plaintiff was, in fact, pretext.

**C. Plaintiff's Retaliation Claim**

Plaintiff claims that she was terminated in retaliation for

---

[6] In any event an inference, however strong, is merely a matter that permits a trier of fact to resolve evidence, it does not resolve the issue of whether there is a triable issue of fact.

1  complaining to Ms. Richert on August 9, 2006 about a hostile work
2  environment and disability discrimination. Plaintiff's retaliation
3  claim is subject to the same burden-shifting analysis as her
4  disparate treatment claim, except that in order to establish a
5  prima facie case, plaintiff must show that (1) she engaged in
6  protected activity, and (2) that she suffered an adverse employment
7  action, and (3) that a causal link exists between the two events.
8  Steiner v. Showboat Operating Co., 25 F.3d 1459 (9th Cir. 1994).

9  **i. Plaintiff's Prima Facie Case for Retaliation**

10  There is a dispute about whether plaintiff engaged in
11  protected activity on August 9, 2006. Plaintiff declares that she
12  raised the issue of disability discrimination in the meeting with
13  Richert. McCoy Decl. ¶ 7. While defendant disputes that fact, that
14  merely creates a material issue of fact. Thus the court concludes
15  that there remains a genuine issue of material fact as to whether
16  plaintiff engaged in protected activity on August 9, 2006.

17  Plaintiff undisputedly suffered an adverse employment action
18  when she was terminated on September 15, 2009. Plaintiff therefore
19  must only show a causal link between the protected activity and the
20  termination.

21  Plaintiff tenders two arguments to support the causal link.
22  First is that a link can be inferred from the close temporal
23  proximity of the two events. The Ninth Circuit appears to draw the
24  line for timing-based inferences of causation at about three
25  months. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054,
26  1065 (9th Cir. 2002)(surveying cases in which a causal link was

1  inferred when there was a lapse of less than three months, but no

2  causal link inferred where the lapse was four five or  eight

3  months,). In this case, there was a lapse of only five weeks, so

4  a causal link could be inferred.

5      Nonetheless, defendant argues that there is no evidence that

6  Brown knew of plaintiff's alleged protected activity, and that such

7  knowledge is a prerequisite for establishing a causal link. Brown

8  admitted that she knew that the subject of the meeting between

9  plaintiff and Richert was Brown's "management style." EEO Hearing

10 Testimony of Linda Brown, Pl.'s Ex. 6:20-21. A causal connection

11 can be established even if the evidence is only that the decision-

12 maker "suspected" protected activity. Actual knowledge is not

13 required. Hernandez v. Spacelabs Med., Inc., 343 F.3d 1107,1113

14 (9th  Cir.2003.  Ultimately  this  is  a  "what  did

15 he-know-and-when-did-he-know-it" question. "Such questions are

16 often  difficult  to  answer,  and  for  that  reason  are  often

17 inappropriate for resolution on summary judgment. It is frequently

18 impossible  for  a  plaintiff...to  discover  direct  evidence

19 contradicting someone's contention that he did not know something,

20 and Hernandez has no such evidence." Id. at 1114.

21     Given the above, the court concludes that plaintiff has met

22 her burden of presenting a prima facie case that she was terminated

23 in retaliation for complaining about disability discrimination.

24 **ii. Defendant's proffered reason for the termination.**

25     As noted above, defendant has met its burden by explaining

26 that plaintiff was fired for the three reasons stated in her

1 termination letter: that she made a racially offensive remark to
2 a co-worker, and that she twice made false statements at work.

3 **iii. Plaintiff's Pretext Argument**

4      In addition to the analysis and facts discussed above  with
5 respect to plaintiff's discrimination pretext argument, plaintiff
6 offers evidence specific to her retaliation pretext argument. In
7 particular, plaintiff offers evidence that Brown had gotten "very
8 angry" in the past when plaintiff met with a Human Resources
9 official about her job title. McCoy Decl. ¶ 6. Brown had indicated
10 that in her opinion "going over her head" was a terminable offense.
11 Id. Plaintiff contends that evidence of this prior incident is
12 evidence that Brown was likely to have gotten angry when plaintiff
13 complained to Richert, and that this was a cause of her
14 termination.[7]

15      The court finds that plaintiff has raised a genuine issue as
16 to whether defendant's stated reasons for the termination were in
17 fact pretext.

18 **D. Remedies**

19      Defendant requests that plaintiff's remedies be limited in two
20 ways: (1) plaintiff's claim for back pay should be limited to a one
21 year period, since back pay for time beyond her appointed term is
22 speculative; and (2) no compensatory damages are available for
23 plaintiff's retaliation claim. The court takes each issue in turn.
24 ////

25 _____

26      [7] As noted above there is a issue of fact as to whether
plaintiff in fact complained about job bias.

21

### i. Speculative Damages

Plaintiff seeks back pay to the date of her termination, and front pay to a reasonable date beyond the date of the judgment. Defendant argues that plaintiff is only entitled to recover back pay up to the point when her two-year term would have ended, on September 30, 2007.

Back-pay under the Rehabilitation Act is an equitable remedy. Lutz v. Glendale Union High Sch., Dist. No. 205, 403 F.3d 1061, 1069 (9th Cir. 2005). Generally, the amount of back-pay awarded may not be speculative. See, e.g., Fresh Fruit & Vegetable Workers Local 1096 v. NLRB, 539 F.3d 1089 (9th Cir. 2008)(holding, in the context of an unfair labor practice, that "[t]he [National Labor Relations] Board may not impose a back pay award in the absence of record evidence as to the circumstances of the individual employees" because such an award would be "purely conjectural."). Thus, defendant argues, back-pay for any time after September 30, 2007, when plaintiff's two-year term of employment would have terminated, is too speculative for the court to award.

Plaintiff argues that a triable issue exists as to whether plaintiff's employment would have continued beyond September 30, 2007. Plaintiff submits evidence from a human resources official, who declares that Brown had approached him about making plaintiff's position permanent. Decl. Ted. Surratt, Pl.'s Ex 7.

In this case, the court may decide, in its discretion, that back and front pay beyond September 30, 2007 may be awarded,
////

1  depending on facts found at trial.[8]

2  **ii. Compensatory Damages for Retaliation**

3       On this issue, the court is confronted with an unambiguous

4  statute that says one thing, and two Ninth Circuit opinions which,

5  put together, unambiguously hold the opposite.

6       The Civil Right Act of 1991, 42 U.S.C. § 1981a, provides for

7  compensatory damages in some cases of intentional discrimination,

8  including for violations of section 501 the Rehabilitation Act, 29

9  U.S.C. § 791. "In an action brought by a complaining party. under

10 the powers, remedies, and procedures set forth in. . . section

11 505(a) of the Rehabilitation Act. . . against a respondent who

12 engaged in unlawful intentional discrimination [as opposed to

13 disparate impact] under section 501 of the Rehabilitation Act. .

14 . , or who violated the requirements of section 501 of the Act (29

15 U.S.C. 791). . . , the complaining party may recover compensatory

16 and punitive damages. . . ." 42 USCS § 1981a(a)(2). In this case,

17 plaintiff is alleging violations of 29 U.S.C. § 791, and seems

18 therefore unambiguously entitled to recover compensatory damages

19 on the face of the statute.

20      However, the Ninth Circuit has held, "[b]y statute, the

21 remedies for violations of the ADA and the Rehabilitation Act are

22 co-extensive with each other, 42 U.S.C. § 12133; 29 U.S.C. §

23

24      [8]Although the amount of back pay is a matter for the court to
   decide, <u>Lutz</u>, 403 F.3d at 1069, the court may rely on an advisory
25 jury for fact-finding relating to the appropriate amount of back
   or front pay. <u>Traxler v. Multnomah County</u>, 596 F.3d 1007, 1013 (9th
26 Cir. 2010)(citing <u>Lutz</u>, supra).

794a(a)(2), and are linked to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq. These statutes require that ADA and Rehabilitation Act remedies be construed the same as remedies under Title VI." <u>Ferguson v. City of Phoenix</u>, 157 F.3d 668 (9th Cir. 1998)(*cert. denied* at 529 U.S. 1159).

The Rehabilitation Act itself contains no anti-retaliation provision, but expressly incorporates the ADA's anti-retaliation provision, 42 U.S.C. § 12203. Compensatory damages are *not* available for retaliation under the ADA. Interpreting § 1981a(a)(2), the Ninth Circuit has held "the text of section 1981a is not ambiguous. It explicitly delineates the specific statutes under the ADA for which punitive and compensatory damages are available. . . [the statute] limits its remedial reach to ADA discrimination claims, and does not incorporate ADA retaliation claims." <u>Alvarado v. Cajun Operating Co.</u>, 588 F.3d 1261, 1268 (9th Cir. 2009). The court held ultimately that "punitive and compensatory damages are not available for ADA retaliation claims." <u>Id.</u> at 1269.

Combining the <u>Ferguson</u> holding that ADA and Rehabilitation Act remedies are co-extensive, with <u>Alvarado</u>'s holding that compensatory damages are not available for retaliation under the ADA, it appears that in this circuit compensatory damages are not available for retaliation under the Rehabilitation act.

### IV. Conclusion

For the reasons stated above, the court ORDERS as follows:

[1] Defendant's motion for summary judgment, ECF No. 67,

24

1      is GRANTED in part and DENIED in part.

2          [2] The motion is GRANTED with respect to plaintiff's

3      claim for compensatory damages for her retaliation

4      claim.

5          [3] The motion is DENIED on all other grounds.

6  IT IS SO ORDERED.

7  DATED:  May 31, 2011.

8

9

10                          LAWRENCE K. KARLTON
                            SENIOR JUDGE
11                          UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26